# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**JAMES S. FALLER, II**                                                                                    **PLAINTIFF**

**v.**                                    **Case No. 4:20-cv-01347-LPR**

**DEWAYNE HENDRIX, Warden;**
**UNITED STATES BUREAU OF PRISONS;**
**UNITED STATES DEPARTMENT OF JUSTICE**                                 **DEFENDANTS**

## ORDER

Plaintiff James Faller, a former federal inmate, brings a *pro se* Complaint alleging that he suffered numerous constitutional and civil rights violations while incarcerated at the Federal Bureau of Prisons (BOP)—Forrest City.[1] Pending is Defendants' Motion to Dismiss.[2] Mr. Faller has responded;[3] Defendants have replied;[4] and the Motion is now ripe for review. For the reasons stated below, the Motion is GRANTED.

## Allegations

Apparently for background purposes, Mr. Faller tells us that he was imprisoned as a result of being framed by the Internal Revenue Service (IRS) and the Department of Justice (DOJ).[5] Once imprisoned, he was allegedly the victim of a "planned, near fatal 'accident'" while housed at a BOP unit in West Virginia.[6] And he was subsequently transferred to the Forrest City unit in

---

[1] Complaint, Doc. 1. Because the alleged violations occurred in the Eastern District of Arkansas, the case was transferred from the District of Columbia to this District by consent. Doc. 14.

[2] Defendants' Motion to Dismiss, Doc. 16.

[3] Plaintiff's Response to Defendants' Motion to Dismiss, Doc. 25.

[4] Defendants' Reply to Plaintiff's Response to Motion to Dismiss, Doc. 26.

[5] Complaint, Doc. 1 at 5.

[6] *Id.*

October 2017.[7] Finally, he was released from the BOP on June 28, 2018.[8]

It is Mr. Faller's time at Forrest City that is at issue in this case. Mr. Faller alleges that, in the eight months he was housed at the Forrest City unit, he was "literally tortured."[9] He sets out a wide variety of accusations in his Complaint. Because he is a *pro se* plaintiff, the Court will liberally construe the Complaint.[10] At the same time, liberally construing the Complaint does not mean making up factual allegations that Mr. Faller failed to put in the Complaint.[11]

First, Mr. Faller asserts that, after arriving at Forrest City, he had "extreme stomach pain" caused by the accident in West Virginia.[12] He says he was "rushed to the hospital," but received only "minor treatment" and "was returned to the prison facility."[13] Mr. Faller does not provide any specific factual allegations, such as who treated him, how long he was in the hospital, what the treatment was, who signed off on his return to the prison, or how (if at all) Mr. Hendrix was involved.

Second, Mr. Faller asserts that "[s]everal months later (while Faller suffered), a surgeon was brought to the prison to examine Faller."[14] To the extent Mr. Faller is suggesting that the delay

---

[7] *Id*.

[8] *Id.* at 6.

[9] *Id*. at 6.

[10] *Sandknop v. Missouri Dept. of Corrections*, 932 F.3d 739, 741 (8th Cir. 2019). The Court will afford Plaintiff such treatment despite his assertion that he "is a highly specialized expert legal consultant who has worked for a year with United States Justice [sic] Richard Posner, obtained and provided expert advice to and from United States Justice Antonin Scalia, practiced in Courts around the world, includ[ing] the United States Supreme Court, and is an expert in dealing with corruption." Plaintiff's Response to Defendants' Motion to Dismiss, Doc. 25 at 4 n.2.

[11] *Sandknop*, 932 F.3d at 741.

[12] Complaint, Doc. 1 at 5.

[13] *Id*.

[14] *Id*.

of several months was unlawful, he provides no specifics. For example, he does not allege that anyone, much less Mr. Hendrix, knew Mr. Faller needed medical attention and prevented him from getting it. He does not allege that any requests for medical attention were ignored.

Third, Mr. Faller alleges that a BOP physician recommended that Mr. Faller undergo an orchiectomy, which is a surgical removal of one or both testicles.[15] Mr. Faller refused the treatment, explaining that he learned what the term meant and that prison staff members told him the surgeon was a "butcher."[16] Mr. Faller provides no further specifics, such as when this interaction occurred, the name of the physician, or under what circumstances Mr. Faller was being treated. And he doesn't explain in the Complaint how Mr. Hendrix was involved.[17] He also doesn't suggest that he requested and was denied necessary medical treatment after this point.

Fourth, Mr. Faller alleges that the HVAC system was kept "below 40 degrees, even in the winter," and that the staff would confiscate blankets and clothing to intensify the freezing.[18] Mr. Faller claims that, at other times, the air was kept at "near heat exhaustion" levels.[19] Mr. Faller does not provide any specifics, such as dates, names of guards, etc. He does not ever suggest that he told a guard he was freezing and was ignored. More importantly, he does not allege that Mr. Hendrix knew about any of this.

---

[15] *Id*. at 5.

[16] *Id*.

[17] In his brief responding to the Motion to Dismiss, Mr. Faller tries to put a little more meat on the bone, arguing that "the prison, through the warden (defendant Hendrix) decided they would bring in . . . a complete quack." Plaintiff's Response to Defendants' Motion to Dismiss, Doc. 25 at 2-3. He also argues that Mr. Hendrix "was in fact the person who was directly interfering with proper medical treatment of Faller when he intentionally deferred treatment 'to save money' . . . ." *Id.* at 6. And he says that, upon his release from prison, he immediately underwent surgery (although he does not say for what). *Id.* at 3. It suffices to say these allegations are not found anywhere in the Complaint.

[18] Doc. 1 at 6.

[19] *Id*.

Fifth, Mr. Faller alleges that, during the eight months he was at Forrest City, "the drinking water was tested and greatly exceeded all EPA standards of safety."[20] He does not allege how he knows this. He does not allege who did the testing, when or how often the testing was done, what standards were exceeded and by how much, and whether any remedial action was attempted. He also does not allege that Mr. Hendrix knew about any of this.

Sixth, Mr. Faller alleges that "[t]he units were continually leaking and full of black mold . . . ."[21] Again, no specifics. What units? What staff? Was Mr. Hendrix involved? Did Mr. Hendrix even know about any of this? Was Faller himself ever exposed?[22] The Complaint is absent of any such factual allegations.

Seventh, Mr. Faller alleges that the BOP staff would promote "gladiator style" violence among the inmates.[23] He qualifies this allegation, but the qualification does not clarify anything. He says the BOP staff would sell contraband to inmates only to then confiscate the item back and criminally charge the inmate for possessing contraband, which caused "more than one act of violence."[24] No alleged dates. No alleged staff names. No allegation that Mr. Faller ever participated in or was ever injured by such violence. No allegation that Mr. Faller was ever sold an item of contraband by BOP officials and then criminally charged for it. No allegation that Mr. Hendrix knew about any of this.

---

[20] *Id.*

[21] *Id.*

[22] Mr. Faller claims for the first time in his Response to the Motion to Dismiss that he has since undergone a series of medical procedures to deal with complications from exposure to black mold. *Id* at 2. Mr. Faller states that in January 2021, he underwent cardiac bypass surgery and was told he has lung deposits caused by black mold. *Id.* at 2 n.1. The relevance of either of these two developments two-and-a-half years after his release from the BOP is left to speculation. Also, none of this is in his Complaint.

[23] Complaint, Doc. 1 at 6.

[24] *Id.*

Eighth, Mr. Faller alleges that any efforts to report the alleged abuse or conditions to the press, or to visiting officials, were met with threats, violence, and placement in isolation.[25] No dates. No staff names. No allegation that threats were ever made to Mr. Faller personally. No allegation that violence or isolation was used to punish Mr. Faller personally for reporting or attempting to report alleged abuse or prison conditions. No allegation that Mr. Hendrix knew about any of this.

Ninth, Mr. Faller asserts that all communication with attorneys or court staff were intercepted.[26] But he doesn't allege this ever happened to him. He doesn't allege Mr. Hendrix knew anything about it. And he doesn't allege how he knows this occurred.

Tenth, Mr. Faller asserts that the name of the prison is discriminatory. The Forrest City unit is named after the city where it is located, which Mr. Faller states was named for a former confederate general.[27] Mr. Faller finds this offensive.

Eleventh, Mr. Faller makes several allegations related to BOP's COVID 19 efforts.[28] He does not allege that any of the BOP's actions affected him personally. That's not a surprise; Mr. Faller was released in June 2018, which was years before the pandemic.

To generally summarize, Mr. Faller challenges his medical care and the conditions of his confinement under *Bivens*,[29] 42 U.S.C. §§ 1981, 1982, 1983, 1985, and under the First, Seventh,

---

[25] *Id*. at 7.

[26] *Id*.

[27] *Id.*

[28] *Id.*

[29] Victims of constitutional violations by federal agents bring their actions under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Eighth, and Fourteenth Amendments to the U.S. Constitution.[30] Mr. Faller seeks injunctive relief and a $1,000,000 judgment to compensate him for his pain, suffering, and mental anguish resulting from the Defendants' "deliberate indifference to his medical needs."[31]

## Analysis

With respect to the claims for injunctive relief, dismissal is required. Mr. Faller was released from the Forrest City unit in 2018. His Complaint does not suggest any imminent concrete chance of his return to the BOP, much less to that particular facility. There is thus no threat of future injury to support any request for injunctive relief.[32]

With respect to the claims for monetary damages against the DOJ and BOP, sovereign immunity bars those claims.[33] Absent express consent by Congress, the United States cannot be sued.[34] Both the BOP and the DOJ are agencies of the United States and, thus, protected under the sovereign immunity doctrine. Neither can be prosecuted under *Bivens*.[35] In his brief responding to the Motion to Dismiss, Mr. Faller contends that Mr. Hendrix can be sued under the Federal Tort Claims Act. Mr. Faller, however, has not asserted any FTCA claims in his Complaint. Moreover, the United States has not waived its sovereign immunity under the FTCA for constitutional

---

[30] Complaint, Doc. 1 at 2.

[31] *Id.* at 11.

[32] *See Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

[33] *See Army & Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 739 (1982) (stating that money damages is an available remedy only when regulations specifically authorize it); *Dep't Of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).

[34] *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).

[35] *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) (stating the well-settled principle that a "*Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity").

violations, which are the gist of the claims that Mr. Faller asserts in his Complaint.[36]

But what about the claims against Mr. Hendrix? First, absent an express statement that Mr. Faller is suing Mr. Hendrix in his individual capacity, the Court concludes that Faller is suing Mr. Hendrix solely in his official capacity.[37] A suit against Mr. Hendrix in his official capacity is really a suit against the federal government itself, which as stated, can only proceed if consented to expressly by Congress.[38]

Second, even if a liberal construction of the Complaint requires the assumption that Mr. Faller made individual capacity claims against Mr. Hendrix, dismissal would still be appropriate. Unless personally involved, a warden cannot be held vicariously liable for the actions of subordinates.[39] In other words, regardless of the sovereign immunity issues, Mr. Faller has not sufficiently pleaded his claims.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[40] A motion to dismiss for failure to state a claim prevails when, after accepting as true all factual allegations in the complaint, a court determines the pleaded facts are conclusory and lend no plausible support

---

[36] 28 U.S.C. § 2679. Even if the Court could somehow construe the Complaint to implicitly plead one or more FTCA claims, for the reasons discussed below, Mr. Faller fails to provide enough specifics in his allegations to state viable claims.

[37] *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.") (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)).

[38] *See Buford*, 160 F.3d at 1201 n.3, 1203.

[39] *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Although it's outside the Complaint, and thus not appropriate for consideration at this stage, it is only fair to acknowledge that both parties now agree that Mr. Hendrix was not the warden when Mr. Faller was at the Forrest City facility. *See* Declaration of Sonya Cole, Doc. 13-2 at 3-4 (stating that Mr. Hendrix became Warden on October 28, 2018); Plaintiff's Response to Defendants' Motion to Dismiss, Doc. 25, at 6–7.

[40] *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

for the claims.[41] Mr. Faller's allegations are just this—completely conclusory. None of Mr. Faller's allegations contain any specifics. He has not pleaded the who, what, when, or where for any of his assertions.

The paucity of specific allegations is not the only problem here. The Complaint also has a myriad of legal deficiencies. For example, in order to prevail on a § 1981 claim, Mr. Faller must show membership in a protected class, that Mr. Hendrix discriminated against him because of his race, and that the discrimination concerned an area enumerated by the statute.[42] More specifically, Mr. Faller "must initially plead and ultimately prove that, but for race, he would not have suffered the loss of a legally protected right."[43] Mr. Faller has not identified any protected right he lost because he is Caucasian.

Other examples abound. Section 1982 prohibits racial discrimination in the sale or rental of real or personal property and is inapplicable here. The § 1983 claims fail as a matter of law because the Mr. Hendrix is a federal (not state) actor.[44] Sections 1985 and 1986 govern conspiracy to interfere with civil rights claims. Mr. Faller makes no attempt to explain what facts support a plausible claim for relief, nor does he allege actual knowledge of a civil rights conspiracy.[45]

Because Mr. Faller has no likelihood of success on any of his claims as currently pleaded, Defendants' Motion to Dismiss (Doc. 16) is granted. This case is dismissed without prejudice for

---

[41] *Wilson v. Arkansas Dept. of Human Serv.*, 850 F.3d 368, 371 (8th Cir. 2017); FED. R. CIV. P. 12(b)(6).

[42] *Williams v. Lindenwood University*, 288 F.3d 349, 355 (8th Cir. 2002).

[43] *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

[44] 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988) (only state actors or private parties acting in concert with state actors are subject to a § 1983 suit); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (private behavior is attributable to the state only if there is a close nexus between the state and the challenged action).

[45] *See Liscomb v. Boyce*, 954 F.3d 1151, 1155-56 (8th Cir. 2020).

failure to state a claim. The Court certifies that an *in forma pauperis* appeal would not be taken in good faith.[46]

IT IS SO ORDERED this 10th day of August 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[46] 28 U.S.C. § 1915(a)(3).